Rufus I. Peace
CHRISTIAN, SAMSON &
BASKETT, PLLC
310 W. Spruce Street
Missoula, Montana 59802
Tel:  (406) 721-7772
Email: rpeace@csjlaw.com
*Attorneys for Plaintiff*

# DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| BRIAN KENNER,<br><br>             Plaintiff,<br><br>     vs.<br><br>BITTERROOT TIMBER FRAMES, LLC, a Montana Limited Liability Company, THREE MILE CREEK POST & BEAM, LLC, a Montana Limited Liability Company, INSULATION EVOLUTION, a Montana For-Profit Company, BRETT MAURI, an individual, CREAMERY ANTIQUE MALL, LLC, a Montana Limited Liability Company, CREAMERY BUILDING, LLC, a Montana Limited Liability Company, CARRIE A. McENROE, an individual, JAMES MAURI, an individual, MCM DESIGNS, a For-Profit Corporation, RAMONA "MONA" COSTA aka RAMONA COSTA-MAURI, an individual, and JOHN DOES 1-10,<br><br>             Defendants. | Cause No. CV-21-120-M-DLC-KLD<br><br><br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO VOLUNTARILY DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(2)** |

COMES NOW Plaintiff, Brian Kenner ("Plaintiff"), by and through counsel, and hereby respectfully submits this Reply Brief in Support of his Motion to Voluntarily Dismiss Pursuant to Federal Rule of Civil Procedure 41(a)(2) (Doc. 26). Plaintiff agrees to dismiss with prejudice all parties, except Carrie McEnroe, Creamery Antique Mall, LLC and Creamery Building, LLC. Plaintiff asks these defendants be dismissed without prejudice. If the Court determines not to dismiss the action, as requested by Defendants' Brett Mauri and Carrie McEnroe, Plaintiff requests leave to withdraw his Motion to Dismiss entirely.

## I. INTRODUCTION

On October 13, 2021, Plaintiff initiated this action by filing his Complaint and Demand for Jury Trial against the above-named Defendants.  After all Defendants answered, but prior to Rule 26(a)(1) initial disclosures being made, the Plaintiff moved for voluntary dismissal of this action under Rule 41(a)(2). All Defendants moved the Court to award them attorney fees and costs. Defendant Brett Mauri ("Brett") also moved the Court to dismiss a Default Judgment in a related action. The crux of the Defendants' basis for these requests is an allegation that Plaintiff lacked any basis to bring this suit in the first place, and only did so to harass the Defendants. This is simply not true, and to lay this allegation to rest, Plaintiff will outline all of the facts that give rise to the probable cause to bring this suit both generally, and Defendant-by-Defendant.

## II. BACKGROUND

Brett is the owner and principal agent of Defendants Bitterroot Timber Frames, LLC; Three Mile Creek Post & Beam, LLC; and Insulation Evolution, LLC. Brett, through his company Bitterroot Timber Frames, LLC, contracted with Plaintiff to construct a home in the Bitterroot Valley, but did not complete the construction of the home. In fact, it was later determined that many of the materials that Plaintiff paid for were never delivered, and that much of the work that was completed had to be redone. Brett insisted that Plaintiff make all payments to Three Mile Post & Beam, LLC, which Plaintiff did.

As a result of Brett's failure to complete Plaintiff's home, Plaintiff brought a suit, in this Court, against Brett and his companies Bitterroot Timber Frames, LLC and Three Mile Creek Post & Beam, LLC. At the time, Plaintiff was unaware of the existence of Insulation Evolution, LLC, but later discovered it was yet another company belonging to Brett. Brett did not answer the suit and a Default Judgment was obtained against Brett and his companies Bitterroot Timber Frames, LLC and Three Mile Creek Post & Beam.

After receiving the judgment, Plaintiff executed upon it, and during the execution of that judgment, Plaintiff or Plaintiff's agents discovered multiple other parties who had been defrauded by Brett in remarkably similar ways as Plaintiff.

In addition, while seizing property (with the Ravalli County Sheriff's Office), Plaintiff's attorney witnessed an interview of Brett by an F.B.I. agent who, among other things, was investigating Brett for defrauding a couple in New York who accused Brett of defrauding them by promising to build a house, beginning construction, then taking funds from the project and using them elsewhere. It became clear that Brett had a history of defrauding clients, and it was also clear that Brett transferred client money to other parties.

For the next several months, Plaintiff continued to execute against Brett, and did recover a substantial amount of money (roughly half the judgment amount). At the same time, Plaintiff subpoenaed Brett's, Three Mile Creek Post & Beam's, and Bitterroot Timber Frames' bank records from Farmer's State Bank. These records were provided to the opposing parties as a courtesy prior to the Rule 26(a)(1) initial disclosure deadline. However, the bank records are far from the only basis for this suit.

After it was clear that multiple parties had profited from Plaintiff being defrauded, and when it appeared unlikely further collection action against Brett was going to be productive, this suit was brought. Now, with the knowledge that a Federal prosecution against one or more of the Defendants is likely and may be imminent, along with the consideration of the cost of litigation balanced against the

likelihood of recovery, Plaintiff desires to step back and take a different approach to recovery.

### III. FACTS

**A. Facts Applicable to All Defendants**

Before identifying facts by defendant, one month of Three Mile Creek Post & Beam's banking records illustrate the basis of this suit perfectly. Conveniently for illustration purposes, the beginning balance of the November 3, 2019 Farmers State Bank account was $78.86, and the entire statement consists of two pages. *See* Excerpt from Farmer's State Bank Records, attached as Exhibit A. The first page provides a summary, and the second page provides copies of a deposit slip and checks written from the account. The second page begins with a deposit slip for $35,000, which was a check from Plaintiff. The next item is a check to "Creamery Antique Mall" for $12,000, followed by a check to someone with the last name "Mauri" for $5,000 and finally a check to "Brett Mauri" for $6,000. Meaning, of this $35,000 payment from Plaintiff for the construction of his home, $23,032.10 went directly to Defendant Carrie McEnroe's ("Carrie") company, an unknown person with the last name Mauri, and Brett Mauri personally.

///

///

///

### B. Brett Mauri, Bitterroot Timber Frames, LLC; Three Mile Creek Post & Beam, LLC; and Insulation Evolution, LLC

Brett was named in this suit for several reasons. First, Brett is a necessary party and under Rule 19 he would have been required to be joined into the suit if he had not been named at the outset. Rule 19 provides:

> (a) Persons Required to Be Joined if Feasible.
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

USCS Fed Rules Civ Proc R 19

Had Brett not been named, the Court could not "accord complete relief among existing parties." Additionally, Brett is the linchpin in the matters alleged by Plaintiff and his absence, as a practical matter, would impair all the parties' ability to protect their interests. The ability to seek discovery from Brett and his associated companies is critical to Plaintiff proving his case against the other Defendants. Likewise, it is important to the other Defendants to have Brett as a party to share blame and damages with.

One of Plaintiff's reasons for naming Brett was to ensure the previous judgment and money collected pursuant to that judgment was accounted for, not to harass Brett.

Despite this, Plaintiff would agree and stipulate to all claims against Brett being Dismissed with Prejudice in this suit, with the understanding that this dismissal does not impact any later claim for criminal restitution.

### C. Carrie A. McEnroe; Creamery Building, LLC; and Creamery Antique Mall, LLC

Carrie is the owner and operator of Creamery Building, LLC, and Creamery Antique Mall, LLC.  It is also believed that Brett may be an owner of Creamery Building, LLC and Creamery Antique Mall, LLC, the truth of which would have been determined through discovery.

Brett fully and openly stated on multiple occasions that he transferred money to Carrie and her associated businesses from his businesses, which necessarily includes money defrauded from Plaintiff and others.  As previously stated, this is supported by the banking records which were obtained for Brett and his companies.

Further, in the Farmer's State Bank Records, Carrie is identified as a "manager" of Three Mile Post & Beam, LLC, and is an authorized signer on the account in the capacity of "manager." *See* excerpt from Farmer's State Bank Records attached hereto as Exhibit B.

Finally, Carrie is co-owner of the real property where Three Mile Post & Beam, LLC and Bitterroot Timber Frames, LLC is located.

In summation, there is clear evidence that Carrie received funds intended for the construction of Plaintiff's home, that she is/was a "manger" of the companies, that she was authorized to expend company funds, and that she is co-owner of the real property where the companies are located. There is no doubt that Carrie was an intricate part of defrauding Plaintiff and as such, Plaintiff will not agree to Dismiss with Prejudice in her case.

### D. James Mauri

James Mauri ("James") is Brett's Father and one of the founders of Bitterroot Timber Frames, LLC, the company Plaintiff contracted with to build a home. James contends he is an innocent, retired person, no longer involved in the company or any business.

However, the facts show that James has been intricately involved in Bitterroot Timber Frames and Brett's other businesses. First, Brett often identifies James as the "East Coast Office of Bitterroot Timber Frames." Second, James' Linkedin page identifies that he is "Marketing Director" at Bitterroot Timber Frames and has been for the previous 23 years. *See* Linkedin page attached hereto as Exhibit C. Third, on October 4, 2017, James was added as an authorized signer

for Bitterroot Timber Frames' Farmers State Bank account. *See* Farmers State Bank records excerpt attached as Exhibit D.

Moreover, a review of the bank records for Bitterroot Timber Frames shows multiple levies, presumably from other judgments, an account James has access to, thereby giving him constructive notice of judgments against the company.

Plaintiff has additional evidence which had yet to be disclosed to the Defendants, because discovery had not begun. For instance, there is yet another company associated with Brett, James and Bitterroot Timber Frames. That is Iron Horse Builders of Kent, Connecticut, owned and operated by Guy Mauri, who is believed to be Brett's brother and James' other son. Iron Horse Builders' website lists James Mauri as its point of contact and identifies Bitterroot Timber Frames as its "western affiliate." *See* printout of Ironhorse Builders website, attached hereto as Exhibit E. In fact, based upon their website, Iron Horse Builders appears to be wholly reliant upon Bitterroot Timber Frames, and it is unclear what work they perform independently.

James is no innocent; he was not quietly sitting in Florida when Plaintiff randomly decided to harass him, rather, James is in the thick of it, as he has been involved in Brett's operations and wrongdoing since the beginning. Despite this, Plaintiff is willing to allow the claims against James to be Dismissed with Prejudice.

### D. Ramona Costa ("Mona"), and MCM Designs

Mona is believed to be the sole owner and operator of MCM Designs, and is married to James. MCM Designs built and maintains websites for Brett's companies, including Bitterroot Timber Frames, Three Mile Creek Post & Beam, and Insulation Evolution. All of these websites make incredible claims regarding the capabilities of Brett and his companies, and it is this advertising that lures in unsuspecting victims to be defrauded by Brett and the gang.

Once the truth of Brett's and his associated companies' capabilities were exposed to the light, it defies logic that the claims published by MCM Designs are even remotely true. Given the family relationship, it further defies logic that Mona was unaware of the truth. Moreover, MCM Designs also built the website for Iron Horse Builders, which features photos remarkably similar to those found on Bitterroot Timber Frames' website.

Finally, MCM Designs received an extraordinary amount of money for website design, including after Plaintiff's funds were provided to Three Mile Post & Beam. For instance, in one six month period in 2019, MCM Designs was paid $25,898 by Three Mile Post & Beam. Perhaps these are legitimate payments, but given the totality of the circumstances, MCM Designs warrants inquiry. *See* excerpt of Farmer's State Bank records attached hereto as Exhibit F.

Despite this, Plaintiff would be willing to stipulate to dismissal with prejudice for all claims against Mona.

## IV. LEGAL STANDARD

**A. Award of Attorney Fees When Court Dismisses Without Prejudice**

The award of feeds are addressed by Federal Rule of Civil Procedure 41(d), which contemplates the imposition of costs upon a plaintiff who previously dismissed an action in any court and then brings a new action based upon the same claim against the same defendant, in which case the court:

(1) may order the plaintiff to pay all or part of that previous action; and

(2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d).

To satisfy this rule so as to allow Defendants to be awarded fees, the Court would have to dismiss this action without prejudice and then the Plaintiff would have to bring the same claims again. At that time the Court *may* award costs of the previous (this) action. Even still, when a court dismisses an action without prejudice, it may award attorney fees and costs to the defendants, less any fees for work that may be utilized in subsequent litigation of the same claim. *Mercer Tool Corp. v. Friedr. Dick GmbH*, 175 F.R.D. 173, 176 (E.D.N.Y. 1997). The purpose of such awards is to avoid duplicative expenses upon the defendants. *Colombrito v. Kelly*, 764 F.2d 122, 133, 2 Fed. R. Serv. 3d (Callaghan) 883 (2d Cir 1985).

Here, Plaintiff moved early in the litigation process to dismiss the case, before discovery had even begun, and any work completed could easily be transferred to a future case if one were ever to occur.

Further, it is clear that Plaintiff had good reason to bring each of the Defendants into this suit, and it is possible that through discovery one or more of the Defendants would be proven innocent of the allegations against them, but that is not the standard to be awarded fees. Sanctions, such as an award of attorney fees, are proper only where a suit is totally frivolous or appears to be brought for an improper purpose. *Muri v. Frank*, 2003 MT 316, ¶ 22, 318 Mont. 269, 80 P.3d 77.

For a suit to be considered a "sham" or brought for an improper purpose, it must be brought without probable cause, i.e., that the suit was baseless. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 54 (1993).

Here, there are facts generally, and for each Defendant, which establish probable cause upon which to base the allegations in this case. Therefore, Defendants cannot recover attorney's fees and cost.

**B. Award of Attorney Fees When Court Dismisses With Prejudice**

Should the Court dismiss the action or a party with prejudice, attorney fees and costs are almost never awarded, unless there is an independent statutory authority for such an award. *Smoot v. Fox*, 353 F.2d 830, 832 (6th Cir. 1965).

Here there is no independent statutory authority, and as previously discussed, there is no basis for awarding attorney fees.

**C.  There is no Basis to Dismiss the Prior Default Judgment**

Defendants Brett Mauri and Carrie McEnroe advance an argument that the default judgment awarded in Case No. 9:21-cv-00016-DLC-KLD should be set aside based upon Plaintiff bringing this suit. However, Defendants cite no legal authority to support this contention but implore the Court to "exercise its discretion" and to set aside the previous Default Judgment. Final Judgments may only be set aside only based upon grounds identified in Rule 60(b), none of which have been presented or argued in this case.

Additionally, this case and this motion are not the proper vehicle to argue setting aside a default judgment in another case. Rather, it would be proper to file a motion to set aside in the original case.

Even if this were the proper vehicle to make an argument, it fails as there is no precedent to support such an action. It is possible that Brett has an argument to be dismissed from the present action based upon *res judicata*, but that in no way impacts the previous judgment.  It is more likely, and proper, that the Court take into account any previously collected funds if it were to award damages in this case.

## V. ARGUMENT

Plaintiff has and has had probable cause to pursue the Defendants for a recovery of damages, but has made a business determination that the expense of prolonged litigation outweighs the chance of significant recovery.  As such, the Defendants have no basis for a recovery of attorney fees.  Further, Defendants have no legal basis to request that a default judgment in a related but separate case be set aside.

Despite their claims to the contrary, all of the named Defendants are intricately related to and intertwined with the damages suffered by the Plaintiff. Mona knowingly published untrue and misleading information about Brett's businesses to lure in victims, which worked on the Plaintiff. Mona also received significant monies which originated from the Plaintiff, and those transfers may have been for the purpose of hiding or protecting her family member's money. James is a signatory on the bank account of Bitterroot Timber Frames. He advertises himself as the "marketing manger" for Bitterroot Timber Frames, and is the primary point of contact for an affiliated company.  James is married to Mona, making Mona's receipt of payments impliedly received by James. Carrie is married to Brett, received large amounts of money directly tied to the Plaintiff, and is a signatory on Three Mile Creek Post & Beam's bank account as a "manager." Finally, Brett is at the center of everything, the front man, defrauding customers

and taking their money. It is a complicated spider web which Plaintiff has decided to leave to the authorities to unravel. That is, unless the Defendants determine to prevent Plaintiff from walking away.

Defendants Brett and Carrie insist that the Court refuse to dismiss this case because they intend to bring counterclaims or, in the alternative, for the Court to set aside the previous default judgment, dismiss this action with prejudice and award attorney fees and costs. There is no legal basis for the Court to do so, and there is no equitable basis for the Court to do so.

Brett and Carrie could have brought an independent case against Plaintiff if they believed there was wrongdoing, but the did not. Further, a dismissal in this case would not impact any claims that Brett and Carrie would have based upon the collection actions in the previous case. Those claims would not be required counterclaims and as such, would still be viable claims if they were brought.

However, even if the claims alluded to in Brett and Carries' brief were brought, they would almost certainly fail. Carrie claims that various vehicles seized and sold pursuant to the judgment belonged solely to her; Plaintiff does not know the truth of that allegation. Brett gave a number of vehicles to Plaintiff to sell as partial satisfaction of judgment. In addition, Plaintiff, through a writ of execution, with the Ravalli Sheriff's Office, seized several vehicles from Brett and his companies. All of the vehicles were sold at a Sheriff's sale, all proper notice of the

sale and other procedures were followed, and no objections were filed prior to the sale or within the objection period following the sale. Any claim regarding the vehicles is likely barred or moot.

## CONCLUSION

Plaintiff desires to end this litigation because it does not make financial sense to continue. Plaintiff desires to dismiss with prejudice all parties except Carrie McEnroe, Creamery Antique Mall, LLC and Creamery Building, LLC. Plaintiff asks these defendants to be dismissed without prejudice. However, he is stuck because Carrie and Brett demand to continue the litigation. Should the Court determine that the litigation should continue, Plaintiff asks leave of the Court to withdraw his Motion in its entirety.

DATED this 7th day of March, 2022.

CHRISTIAN, SAMSON & BASKETT, PLLC


/s/ Rufus I. Peace
Rufus I. Peace
*Attorney for Plaintiff*

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of March, 2022, a copy of the foregoing document was served on the following person(s) by the following means.

<u>   1-3   </u>     CM/ECF
<u>         </u>     Hand Delivery
<u>         </u>     U.S. Mail
<u>         </u>     Overnight Delivery Service
<u>         </u>     Fax
<u>         </u>     E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. Carey B. Schmidt
   Dave Berkoff
   Schmidt Berkoff, PLLC
   1917 S. Higgins
   Missoula, MT 59801
   carey@blackfootlaw.com
   dave@blackfootlaw.com
   *Attorneys for Defendants*

3. Nathan A. Fluter
   Nathan A. Fluter & Associates, PLLC
   1917 S. Higgins
   Missoula, MT 59801
   nathan@fluterlaw.com
   *Attorneys for Defendants*

                              CHRISTIAN, SAMSON & BASKETT, PLLC


                              <u>/s/ Rufus I. Peace</u>
                              Rufus I. Peace
                              *Attorney for Plaintiff*